Welcome back. Thank you. Good to see you again. So, Your Honors, may it please the Court, I'm Stephen Parsley here for Appellate Wells Fargo Bank. I'd like to reserve two minutes again for rebuttal. All right. This case is kind of the opposite of the case before. Here, the Court did not hold the claim was time barred. Instead, it reached the merits on the bankruptcy stay violation and held that we lacked standing. There's been no argument by either appellate in the answering briefs they filed to distinguish this case from the enchantment decision that this Court handed down before the answering briefs were filed. The case goes unmentioned in their brief. And it's clear here that the district court's rationale under previous law about bankruptcy standing was wrong. The Court can't hold that we lack standing to argue. Enchantment was published. And it's clear here on the merits that the notice of delinquent assessment lien and the notice of default, which are two of the three notices required by statute, were both recorded in violation of the automatic stay. And that voids the sale. It doesn't merely make the sale voidable. That's the whole point of the enchantment decision is that it's just void ab initio. Are you making any arguments that have been waived? No, Your Honor. That was addressed in our briefing. And Nevada has a very open-ended, quiet title claim pleading standard. It holds that you can plead any element. Sorry, it holds that there's no required element, but you can plead any ground. General federal law, of course, is that complaints don't have to include precise legal theories. So even if Nevada's quiet title claims weren't especially open-ended, that would probably be enough. But here, the Nevada Supreme Court, the Chapman decision, supports our case. And in fact, this court in the Scott v. Murs case from 2015 actually vacated a district court decision that had required the bank to, quote, set forth the specific legal theory, statutory basis, or common law basis for the quiet title claim. And counsel, didn't the district court address this claim on the merit? Additionally, the district court did address on the merit. So it would be very odd to hold it was waived when the district court exercised its discretion to consider the issue. SFR has argued that they were prejudiced in some way by the claim being supported with a bankruptcy state violation at the summary judgment stage. But that rings hollow in light of the fact that SFR didn't request additional discovery under Rule 56 by filing affidavit outlining any more discovery needed. And as to claiming that they were denied the opportunity to seek a retroactive annulment of the bankruptcy stay, this wasn't argued below. They could have protested when the summary judgment briefing was filed that they wanted to do that. And in fact, they could have been doing this concurrently with the appeal. They could have been doing it after the judgment came down in the bankruptcy court. They could have asked for the cases to be held in abeyance while that went on, but it just popped up for the first time in briefing. We'd also note that it's not a right to get a retroactive annulment. In fact, it's only to be granted in extraordinary circumstances. That's the phrase that this court has used to describe a retroactive annulment, which is mentioned in our reply brief. And I'd note that in the enchantment decision itself, this court didn't merely vacate the decision, but actually rendered judgment in favor of the bank on the issue of the bankruptcy stay. There is a subsequent unpublished case called Corte Madera where this court did the same thing. So I would respectfully submit that we don't need any more proceedings on the bankruptcy stay issue. This court can decide it right now in favor of the bank. The next major issue here is the statute of limitations. SFR, much like in the prior case, argued for a three-year statute of limitations under NRS 11.190. They didn't argue for 11.220. I won't repeat what I've said in the last argument about that. The district court didn't address this issue, correct? The district court held that it wasn't time barred using a five-year statute that ultimately proved not to be correct. But we thought that outcome was correct under properties. Now, counsel, if I remember correctly, in this case, both parties asked this court, maybe not this panel, but asked this court to send this case back to redo the statute of limitations analysis. Do I have that right? Yes, Your Honor. And a two-judge panel of this court said no. Yes. Now, let's say this panel says maybe we should do that. Do you still think we should do that? Let's pretend that two-judge order never happened. Do you think that's what we should do or have things changed in the law where now we don't need to do that? I think there's been enough decisions coming out from this court to resolve some of the uncertainty. That was also an effort we initiated just to speed things along, hoping for avoiding a fresh round of district court litigation and a fresh appeal to this court. So, counsel, if we agree with you that the bill was void, do we need to reach those other issues you're arguing? No, that's enough to set it aside. There also is that equitable argument, but to be frank with you all, that is a little harder of an issue. The bankruptcy court issue, bankruptcy stay issue is extremely clear under enchantment. And if I were sitting in your shoes, I would just resolve on the bankruptcy stay and not touch the equitable argument. But it is good law as well under some unpublished and out-of-screen court decisions. Did you want to save the balance a good time for rebuttal? Yes, Your Honor. Thank you. Ms. Lane? I mean, Ms. Hanks, I'm sorry. Good morning again, Your Honor. Karen Hanks on behalf of SFR. Really what I want to highlight is that the bankruptcy violation was waived. There was no mention of it in any of their initial complaint. The bank amended their complaint, never made any mention of the bankruptcy violation. SFR had filed a counterclaim. There was no defense mentioned of an automatic stay violation. And because of that, the first time it's mentioned is on dispositive motion briefing. So, counsel, your waiver argument was made to the district court? Yes, Your Honor. And the district court nevertheless decided the issue? I don't agree with that. You don't agree that it decided the issue? No, she didn't. She dismissed it on a threshold issue of standing. So, I don't think she got to the merits of the argument. She didn't get to the merits, but she decided the issue by saying they didn't have standing. Correct? Yeah. And so, isn't that issue, the issue she addressed, isn't that properly before us? Because that wasn't waived if the district court addressed it. Your Honor, it... How is the standing issue waived if the district court addressed it? Well, Your Honor, I don't think you can speak to... No party can waive standing. Every court has to have jurisdiction to hear the claim. So, as a threshold matter, even if jurisdiction wasn't waived, we would have been able to bring that up on appeal had enchantment never happened. I don't understand, then, why you're saying this issue is waived if a party can't waive jurisdiction. I don't understand your argument, then. I guess I'm drawing a distinction between the district court deciding the threshold issue of whether the party even had the right to raise an automatic stay with reaching the merits of the issue such that our waiver argument is now completely off the table on this juncture of the case. In other words... And then you have the added back pattern of enchantment came out midstream of this appeal. So, in other words, SFR, not only was it blindsided by an issue that it could have rectified through a retroactive annulment, which it did in countless cases, by the way, it was granted retroactive annulment when a party raised it timely. And now with the enchantment case coming out midstream of this appeal, that issue would have been front and center for the district court. So why wouldn't it be prudent for us to, if we decided that the district court erred in saying that the bank didn't have standing, to send it back on that issue and then the district court can listen to all of the other arguments that you have? Why wouldn't that be the best course of... I have no argument with that. Okay. I don't disagree with that. What I want to make sure is that SFR doesn't lose its waiver argument merely because a judge reached the threshold issue of standing and then a subsequent decision came out that I will be candid with the court makes that decision wrong. I mean, enchantment does clearly provide they have standing. And so now SFR would be deprived of raising the waiver argument. And so I do want to just highlight... So just so I understand, your waiver argument would be on the merits of the violation of the automatic stay? Yes. In other words, we would argue that the bank cannot assert the automatic violation stay because they didn't raise it in their pleading. Well, that's the standing argument stated another way. No, I don't believe so. Because standing, in terms of what the court was looking at, originally was a purely jurisdictional issue. They had no injury to complain of. So there was no Article III prudential standing to even be before the court. That's the same thing. They don't have the right to come in and complain about the violation of the automatic stay. So that's... No, my argument is they don't have the right to argue it in this dispositive motion stage. It's a prejudicial argument that you didn't raise. This was the issue of why you were challenging the sale. And the prejudice to SFR, had you raised it, they would have sought retroactive annulment and could completely take the issue off the table. Well, the district court can decide that if we send it back. I don't know that we need to decide it. But I have to say for me personally, I think that's a distinction without a difference. And I respect that, Your Honor, but I would agree. Then remand it so the court can consider that. I mean, frankly, we could still... We may or may not. I'm just asking you questions. I'm not saying what the panel will do. We may decide that the issue is performed in the standing issue. I don't know what we'll decide. And I would just argue that would serve as a severe prejudice to SFR because of the only reason that becomes even more harmful SFR is that the enchantment decision came out after the fact. And so, in other words, we would have a fuller... The fact that the law changes is not prejudicial. Prejudicial in the sense that the reason why the district court went through the standing, she would have known at that time she would have had to reach SFR's waiver argument. But that's my point in terms of the extra prejudice. She would have known the law didn't allow her to say they didn't have standing to bring the claim and either could have reached the merits to see if there was actually an automatic state violation, because you don't have that analysis either, or two, whether SFR was indeed prejudiced by the waiver. If she thought it was prudent to reopen the case and allow SFR to get retroactive annulment, if that would appease the prejudice that was to SFR. So I take it you agree that the district court's decision on standing was incorrect as the law now stands. Yes, I would have to concede that, Your Honor. And with respect to the final issue, or at least that I think that counsel was touching upon, because I think he admitted the fraud and fairness suppression issue was a little bit weak for him, is that this court, excuse me, the district court did decide the statute of limitations with the erroneous thinking that the five-year statute of limitations applied. And you are correct, Your Honor, in mentioning we did do a joint motion to remand. I still stand by that. I think it's the same as the prior case. You're lacking an analysis and facts of Thunder Properties and its application to this case. We have a party here, just to kind of give a little bit of insight, is that Wells Fargo was assigned the interest in 2015. And by that point, the sale had happened in 2012. So here's a party coming onto the scene knowing the full scope of what had happened with respect to this loan. They were on notice that an HOA sale happened. They were on notice that SFR purchased it. And by 2015, there was multiple cases pending between this particular bank and SFR. That doesn't change the requirement of Thunder Properties, though. What I'm saying is those facts contribute to the framework of Thunder Properties, such that a court could find that Wells Fargo was more than enough on notice. But notice isn't the issue. I think that's where the disconnect is, that the Thunder Properties requires some affirmative repudiation, not just notice. But that's where I get back to hyper-focused on the action. It's the action itself that is difficult. But Thunder Properties is. The difficulty with your argument is that Thunder Properties made it clear that there must be some affirmative repudiation. And you appear to be focused on all of the things that gave the bank notice. But under Thunder Properties, as I read it, that's not enough. What I'm saying is it's those actions that give the bank notice. We're still talking about notice. It's just those actions and the repudiation on SFR back in 2015, specifically with Wells Fargo. And I think we cited it in our briefing. There were in excess of 40 cases pending with Wells Fargo, where Wells Fargo sued SFR, claiming their deed of trust survived the HOA sale. And in every single case, SFR took the consistent position, the HOA sale wiped out your deed of trust. So there was no mistaking that SFR took action, either by filing a lawsuit pre-SFR decision, 2014, or post-2014 defending any action that Wells Fargo filed against it. All right, counsel, you've exceeded your time. We'll hear from Mr. Anderson. Thank you. Good morning, Your Honor. My name is Sean Anderson, representative of Springs Centennial Ranch. Now, my presentation would be duplicative of Ms. Hanks' presentation regarding all of those issues. But the single thing that I would like to say is we would suggest that the proper thing to do would be to remand the case back on the threshold issue of the statute of limitations. I think that it would be the proper thing to do. Flesh that out and get that issue resolved. I think the rest of the issues flow from there. It can be decided at the district level. Do you agree with your co-counsel that this issue was waived? Yes. All right. And with that, Your Honor, that's it. All right, thank you. Thank you. Thank you to all counsel. The case just argued is submitted for decision by the court. Oh, rebuttal. I'm sorry. I'm sorry. Rebuttal. Thank you. Thank you. I'm sorry. Yeah, sometimes you may not want to come up again. Just be careful. I'm sorry. I apologize for getting rebuttal. No problem at all. I don't think I'll need the three minutes and 45 seconds in full. But just to touch on the bankruptcy stay violation waiver issue. Again, the Chapman decision from the Nevada Supreme Court and the Scott versus MERS decision from this court in 2015 both leave no doubt that Nevada's quiet title pleading standards are very broad. There hasn't been any case law cited that we had to give our bankruptcy stay theory in the complaint to make that an issue we could raise in support of our quiet title claim at summary judgment. As to remanding, again, there's no question that the district court would need to address on the bankruptcy stay issue. So why do you say there is no fact question on whether or not the automatic stay was valid? It's a fact question. I guess I should clarify that. It's a fact question that can be resolved from the docket and the bankruptcy stay and the bankruptcy proceeding, which shows when the petition was filed, which created the stay, when the stay ended. And then from the record here, we can tell when the two notices, the notice of delinquent assessment lien and the notice of default were recorded. So that leaves no question about when the stay lasted, when the two notices were given and under enchantment, there's no question that recording those during the stay violated the sale. So it's something that this court can resolve without getting the district court involved again. So a notice of assessment is sufficient to constitute a collection action. Yes, Your Honor. And we cite a number of cases that hold that any one of those three notices being recorded is sufficient to have the sale void here. We have not just one, but two of those three. As to the statute of limitations, I didn't address this in the last case, but SFR has claimed a global policy to repudiate, but it's not clear what this global policy might've consisted of. We have some cases where SFR sued, maybe there were 40 before or something, but then we have other ones where like this case and the one before the SFR did nothing for years and years requiring the bank to bring the action to get something, to get an order, confirming the deed of trust had survived. So what the policy might've been, it sure doesn't seem to have been global to always repudiate it. There wasn't a letter sent or a notice posted or something like that, that SFR always took that position. So I don't think we can take that into consideration now. And the one last thing is just on equities, to respond to Ms. Hanks, I don't concede that our argument is weak. It's just that the bankruptcy stay issue is such a slam dunk. This court can, for its judicial economy purposes, just resolve the appeal on the bankruptcy stay and avoid diving into equities. And that's all, unless you have any more questions. Thank you. Thank you to all counsel. Once again, I apologize for inadvertently depriving you of your rebuttal time. The case just argued is now submitted for decision by the court.
judges: RAWLINSON, OWENS, Fitzwater